UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JOHN DAVIS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KAJIKAZI, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:20-cv-01197 CKD (SS)<br><br><br>ORDER |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

　　　　Plaintiff, born in 1961, worked from 1995 through 2008 as a truck driver and supervisor at two trucking companies.  Administrative Transcript ("AT") 476-477.  He applied on May 22, 2014 for DIB, alleging disability beginning November 21, 2008.  AT 17, 477.  Plaintiff alleged he was unable to work due to type 2 diabetes, peripheral neuropathy, and low back pain.  AT 212,

1

215. In a decision dated November 2, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 17-26. After a district court remand to consider additional evidence, a different ALJ issued a decision dated April 3, 2020, again finding plaintiff not disabled. AT 465-478. Plaintiff challenges the 2020 decision in the instant case.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant engaged in substantial gainful activity during the following periods: April 1, 2016 to the present.
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

remaining findings address the period prior to April 1, 2016 in which the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: diabetes with peripheral neuropathy, hypertension, hyperlipidemia, obesity, and lumbago.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, except he cannot climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He cannot work at heights and must avoid concentrated exposure to operating heavy machinery, including driving.

7. The claimant is unable to perform any past relevant work.

8. The claimant was born on XX/XX/1961, which is defined as a younger individual 18-49 on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age through March 31, 2016.

9. The claimant has at least a high-school education and is able to communicate in English.

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, from November 21, 2008 through the date of this decision.

AT 467-478.

The ALJ relied on vocational expert (VE) testimony that plaintiff would be able to perform the requirements of medium, unskilled occupations such as scrap sorter, kitchen helper, and meat clerk. AT 477.

////

////

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erroneously found that plaintiff engaged in substantial gainful activity after April 1, 2016; (2) the ALJ erroneously discounted the opinion of a treating physician; and (3) the ALJ erroneously discounted plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

ANALYSIS

A. Substantial Gainful Activity

Plaintiff asserts that the ALJ erred in finding that he "consistently engaged in substantial work activity since April 1, 2016." See AT 469.

Under the Social Security Act, disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "Substantial gainful activity is work activity that is usually done for pay or profit and that involves doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions, self-employment, and time spent working." Simpson v. Berryhill, No. 18-CV-00309-JSC, 2019 WL 2106591, at *2 (N.D. Cal. May 14, 2019) (citing 20 C.F.R. §§ 404.1572–73; 416.972–73).

In determining whether work activity constitutes substantial gainful activity, the SSA's "primary consideration will be earnings [the claimant] derive[s] from the work activity." 20 C.F.R. § 416.974(a)(1). "The mere existence of earnings over the statutory minimum is not dispositive." Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990) (citing Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978)). However, earnings over the statutory minimum creates a presumption of substantial gainful employment. Id. A claimant may rebut the presumption "based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." Id. (citing Anderson v. Heckler, 726 F.2d 455, 456 (8th Cir. 1984)). "In considering whether the presumption is rebutted, the factors to be considered include the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, special working conditions, and for individuals who are self-employed, the value of their work to the business." Corrao v. Shalala, 20 F.3d 943, 948 (9th Cir. 1994). See also Katz v. Secretary of Health & Human Services, 972 F.2d 290, 293 (9th Cir. 1992) ("The earnings presumption can be rebutted. Factors to be considered in addition to the amount earned include the time spent

working, quality of a person's performance, special working conditions, and the possibility of self-employment.").

Here, the ALJ found that plaintiff's in-home care of his elderly mother constituted substantial gainful activity after April 1, 2016. The ALJ summarized plaintiff's testimony as follows:

> The claimant testified at the [February 2020] hearing that he is a caregiver for his mother and he is still caring for her currently. He is currently paid for just over 160 hours per month of care at a rate of $13 per hour. His hours have steadily increased since 2016. His mother is blind and deaf. She will be 100 years old in September 2020. He helps feed her and helps her to the bathroom. She is unsteady. He helps with chores and makes meals. 3 years ago, her doctor started coming to the house because his mother is bedridden.

AT 468; see AT 492-495 (hearing testimony).

The ALJ noted that, since 2013, plaintiff had been paid by the state's In Home Supportive Services (IHSS) program to be an adult care provider for his mother.[2] AT 468. The ALJ noted that plaintiff reported in March 2015 that he "cared for himself, cooked simple meals, washed dishes, vacuumed, shopped and drove. In November 2015, he reported helping his mother with toileting, 'dressing, bathing, etc.'" AT 474, citing AT 383, 400. The ALJ found that, beginning in April 2016, plaintiff's earnings from IHSS exceeded the statutory minimum.[3] AT 468-469.

Plaintiff acknowledges that his IHSS income came to exceed the substantial activity guidelines. (ECF No. 28 at 2.) This created a rebuttable presumption of substantial gainful employment. Plaintiff asserts that the ALJ failed to explicitly consider whether his work was done under "special conditions" under 20 C.F.R. § 404.1573(c), which provides:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered

---

[2] Plaintiff has attached to the complaint copies of W-2 forms listing his mother, not IHSS, as his employer in 2017, 2018, and 2019. (ECF No. 1-1.) This evidence was not before the ALJ and did not factor into his decision. (See ECF No. 17.)

[3] The ALJ found that plaintiff earned roughly $1,400.00 per month during the last three quarters of 2016, over $18,000 per year in 2017 and 2018, and over $22,000 per year in 2019, putting him in excess of the monthly earning threshold during this period. AT 468.

6

>workshop or as a patient in a hospital. <u>If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity.</u> . . . Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
>
>(1) You required and received special assistance from other employees in performing your work;
>
>(2) You were allowed to work irregular hours or take frequent rest periods;
>
>(3) You were provided with special equipment or were assigned work especially suited to your impairment;
>
>(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
>(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
>(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.
>
>(d) If you are self-employed. Supervisory, managerial, advisory or other significant personal services that you perform as a self-employed individual may show that you are able to do substantial gainful activity.
>
>(e) Time spent in work. While the time you spend in work is important, we will not decide whether or not you are doing substantial gainful activity only on that basis. We will still evaluate the work to decide whether it is substantial and gainful regardless of whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood.

(Emphasis added.)

Upon determining that plaintiff's earnings after April 2016 exceeded the statutory minimum, the ALJ reasoned as follows:

>This work is not sheltered employment because the employer, the State of CA IHSS, does not direct how the work is performed or under what conditions . . . [and does not provide] any accommodation even if the claimant is only doing the work in short increments. Likewise, even if the claimant is only doing the work part time, part time work is still substantial work if it exceeds the annual presumption threshold[.] The regulations do not provide an exception for IHSS earnings. Moreover, the claimant acknowledged that he had no <u>special conditions</u> or expenses related to this work.

7

AT 469 (emphasis added).  In support of the last statement, the ALJ cited plaintiff's November 2008 work activity report, submitted with his DIB application, in which he checked a box indicating that he did not work under any "special conditions," such as receiving extra supervision, special help, working different hours, taking more rest breaks, or performing less work than other workers.  AT 203-205.

Plaintiff argues that the ALJ's decision "fails to . . . properly consider [the § 404.1573(c)] factors, particularly the factors of irregular hours and frequent rest periods, lower standards of productivity, and opportunity to work because of family relationship, and the special circumstances of being present performing most of the tasks for himself anyway." (ECF No. 28 at 5.)  He asserts that explicit consideration of these factors would result in a finding that plaintiff's in-home care of his mother was so much less demanding than a regular job that it did not constitute substantial gainful activity, despite paying above the statutory minimum.  Plaintiff further argues that the ALJ failed to develop the record by not questioning him further about the conditions under which he worked.  In sum, plaintiff argues that the ALJ glossed over the multi-factor analysis he was required to make under § 404.1573(c), instead citing a checkbox form to find that no special conditions applied.

Defendant counters that the ALJ considered whether plaintiff's work was done under special conditions, such as in a sheltered workshop, "and reasonably concluded that, while a family relationship was present, he was nevertheless performing SGA." (ECF No. 20 at 12.)  While defendant cites evidence that arguably supports a finding that no special conditions existed, the court is limited to reviewing the reason given by the ALJ: namely, the checkbox form submitted with plaintiff's 2018 disability application.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (noting that a court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

In Griggs v. Astrue, 2011 WL 4591079, *2 (Sept. 30, 2011), a court in this district concluded that "the ALJ failed to apply and follow the [applicable] guidelines . . . in considering plaintiff's earnings and determining whether she was engaging in SGA at the relevant times." Plaintiff was working as an IHSS caregiver for a friend.  Id. at *3.  The court reasoned that "[t]he

ALJ should have evaluated the evidence indicating that plaintiff's work was done under special conditions, including the evidence before the ALJ that plaintiff was not the only IHSS provider employed to assist her friend/employer and that plaintiff was permitted to work irregular hours and take rest periods when needed." Id. at *4. The court continued:

> At the administrative hearing in this case plaintiff presented evidence that can be fairly characterized as rebutting the SGA presumption, even if that presumption was properly invoked in the first instance. Yet, the ALJ's brief treatment of the issue . . . did not address that evidence. Accordingly, the ALJ failed to apply the correct legal standards in finding that plaintiff had engaged in substantial gainful activity since February 1, 2008.
>
> . . . The court finds that the Commissioner's decision must be reversed because the ALJ did not develop the record in accordance with the guidelines established in SSR 83–33[4] and, as a result, the decision that plaintiff engaged in SGA is not supported by substantial evidence.

Id. at **4-5. See also Kohnen v. Colvin, 2014 WL 2568886, *5 (N.D.Cal. June 6, 2014) (despite testimony that claimant needed extra help at work, "the ALJ failed to analyze how well Kohnen performed his work or what special conditions he worked under to perform his job. These facts are directly relevant to determining whether Kohnen was performing SGA") (remanding for further development and evaluation of the record); Chavez v. Colvin, 2014 WL 12029267, *4 (E.D.Cal. April 25, 2014) (despite testimony of "very lenient" employer and frequent breaks, "the ALJ did not discuss whether plaintiff's work was performed under special conditions or whether his earnings at those positions were subsidized. The ALJ's failure to do so was legally erroneous and merits remand.").

Here, plaintiff testified at the first hearing, in September 2016, that although IHSS was paying him to take care of his elderly, blind mother, "I wouldn't really call it a job. . . . I don't leave the house. I don't even get dressed." AT 48. He testified that he brought his mother food, helped her to the bathroom, and made sure she took the right medications. AT 48. He further

---

[4] See SSR 83-33 (S.S.A.), 1983 WL 31255 at *8 ("Under the tests of comparability and worth of work, a finding of SGA will not be made if there is a reasonable explanation as to why an employee's earnings are not substantial. A reasonable explanation might be the inability to perform the full responsibilities of the job, such as working at a slower rate or working fewer hours (part-time) than unimpaired persons. It would be speculative to conclude that such an individual could increase a limited work effort to a level of SGA.").

9

testified that, in a typical day, he spent most of the day in a recliner. "Then I get up because I have to get up anyway. And then I go check on my mother, which is mostly in bed most of the time." AT 57. At the second hearing in February 2020, plaintiff testified that his mother was now legally blind and deaf and almost 100 years old. AT 493. He testified that his work had steadily increased since 2016 when she broke her clavicle, and that he assisted her with medication, meals, and the bathroom. AT 493-494. Plaintiff testified that his mother was bedridden and her doctors came to the house, so he did not need to drive her to appointments. AT 494-495. He testified that he made meals and did household chores in the course of caring for this mother, both of which he did for himself anyway. AT 494.

As in Griggs, plaintiff presented evidence that arguably rebutted the SGA presumption, but the ALJ failed to develop the record on this issue and analyze "special conditions" under the § 404.1573(c) factors. This was legal error. The court next considers whether this error warrants a second remand of this matter.

B. Harmful Error

The alleged period of disability in this case runs from November 2008 to April 2020, the date of the second ALJ decision. The ALJ determined that, as of April 2016, plaintiff was engaged in substantial gainful activity and focused on plaintiff's impairments prior to April 2016, discounting later evidence of disability as irrelevant. See AT 469 ("The remaining findings address the period prior to April 1, 2016 in which the claimant did not engage in substantial gainful activity.").

For example, the ALJ noted that plaintiff "sustained a right ankle fracture on August 12, 2016. However, the injury and subsequent limitations occurred after the claimant began engaging in substantial gainful work activity on April 1, 2016." AT 469. At the first hearing in 2016, plaintiff testified that he had fallen in the kitchen and fractured his foot, which required surgery to insert a plate and five screws. AT 49; see AT 470. At the second hearing in 2020, plaintiff testified that he'd had another surgery on his foot in 2017 to repair a broken screw; he stated that he sometimes walked with a limp. AT 500-502. In September 2016, plaintiff's long-term treating physician, Dr. Stacy Berrong, opined that he had significant limitations in sitting,

standing, and walking, and would need frequent unscheduled breaks (among other limitations), due in part to a right ankle fracture. AT 474, citing AT 739-751. The ALJ gave little weight to Dr. Berrong's opinion, reasoning that "the claimant's limitations after March 31, 2016 are not relevant because the claimant was engaging in substantial gainful work activity." AT 475.

With the last four years of alleged disability off the table, the ALJ did not consider plaintiff's status after he turned 55 in 2016 and the disability criteria changed. See AT 477 ("The claimant subsequently changed age category to closely approaching advanced age through March 31, 2016."). Based on the foregoing, the undersigned concludes that the ALJ's error in the SGA analysis was not harmless. Plaintiff is entitled to summary judgment.[5]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

---

[5] The court does not reach the remaining claims.

1       Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

      For the foregoing reasons, IT IS HEREBY ORDERED THAT:

      1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;

      2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is denied; and

      3. The matter is remanded for further administrative proceedings consistent with this order.

Dated: September 16, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/davis1197.dib.ckd

12